# IN THE COURT OF APPEALS OF IOWA

No. 23-1230
Filed October 11, 2023

**IN THE INTEREST OF M.D.,**
**Minor Child,**

**C.D., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon, District Associate Judge.

A father appeals the termination of his parental rights to his twelve-year-old son. **AFFIRMED.**

Brandy R. Lundy of Lundy Law, PLC, Fort Dodge, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Gregory H. Stoebe, Humboldt, guardian ad litem for minor child.

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, attorney for minor child.

Considered by Tabor, P.J., Buller, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**TABOR, Presiding Judge.**

Twelve-year-old M.D. has developmental delays and an individualized education program (IEP) at school. But his parents have had scarce involvement with the services he needs to learn and mature. Almost two years after M.D. was removed from their home, the juvenile court terminated the parental rights of both the mother and father. Only the father, Curtis, appeals.[1] He argues that termination of his parental rights is not in M.D.'s best interests under Iowa Code section 232.116(2) (2023). Curtis also contends that the court should have applied the exception to termination in section 232.116(3)(c) given the closeness of the father-son bond. Finally, he asks for six more months to work toward reunification.

After our independent examination of the record, we reach the same conclusion as the juvenile court.[2] Curtis has shown "little to no insight into the special needs of his child, the effort it takes to take care of him, or even the gravity of these proceedings." We thus affirm the termination of his parental rights.

## I.    Facts and Prior Proceedings

M.D. has special needs. When child protection workers with the Iowa Department of Health and Human Services visited his home in September 2021, they found him malnourished, lacking proper hygiene, and off his medication regime. The juvenile court adjudicated him as a child in need of assistance (CINA) in November 2021. Because of his difficult behaviors, during the first nine months after removal, he had three placements, including family foster care, fictive kin, and

---

[1] The mother consented to termination of her rights at the hearing.
[2] Our review is de novo. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). Under that standard, we give weight to the juvenile court's factual findings, but they do not bind us on appeal. *Id.*

shelter care. After those were disrupted, M.D. spent over seven months in a psychiatric medical institution for children,w hich the department acknowledged was a long time for a child. At the time of the termination hearing, he was in foster care. But that family had second thoughts about adopting him after a violent episode when M.D. had to be restrained.

Curtis has his own mental-health struggles. He has a diagnosis of schizophrenia and has been inconsistent with medical management. According to the department social worker, Curtis also has limited reading skills, making it difficult for him to follow instructions. He supports himself through supplemental security income disability payments. Early in the CINA case, Curtis responded to the department's offer of services. For instance, in the first year after M.D.'s removal from home, Curtis visited him thirty-four times. But as the social worker described it, "then it just stopped." In the year before the termination hearing, Curtis had only seen his son twice. At the termination hearing, Curtis did not have a good explanation for missing so many visits with M.D. But Curtis did testify that when they had visitation, it went well: "He's always excited to see me."

The juvenile court terminated Curtis's parental rights under Iowa Code section 232.116(1), paragraphs (b) and (f). He appeals.

## II.      Analysis

Curtis does not challenge the statutory grounds for terminating his parental rights. So we need not address that step in the termination process. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (describing three-step analysis for termination cases). The remaining questions are (1) whether termination is in M.D.'s best interests; (2) whether termination would harm M.D. because of the closeness of

the parent-child relationship; and (3) whether Curtis could be a safe caregiver if he had another six months to improve his parenting skills. *See id.*; *see also* Iowa Code § 232.104(2)(b).

*A. Best interests.* In making this determination, we give primary consideration to the child's safety, to the best placement for furthering his long-term nurturing and growth, and to his physical, mental, and emotional conditions and needs. Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 40. The Iowa Code allows us to consider whether a parent's ability to provide for the needs of the child is affected by "the parent's mental capacity or mental condition." Iowa Code § 232.116(2)(a).

In his petition on appeal, Curtis asserts: "Termination of parental rights is not in the best interests of this child as it eliminates other options and effectively makes this child an orphan." We disagree and adopt the juvenile court's reasoning: "Despite the uncertainty surrounding [M.D.'s] future, it is clear that the physical, mental and emotional condition and needs of the child cannot be met by the parents, but have been met and continue to be met by others." This harsh reality is underscored by Curtis's untreated schizophrenia and limited mental capacity, which hamper his ability to parent a special needs child. *See In re B.H.A.*, 938 N.W.2d 227, 235 (Iowa 2020) (providing a parent's mental health is a factor we consider when it affects his ability to meet the child's needs).

*B. Closeness of parent-child relationship.* When analyzing claims under Iowa Code section 232.116(3), our supreme court has decided that the burden shifts to the parent to prove an exception can save the legal relationship. *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). Curtis invokes the permissive exception

under section 232.116(3)(c), claiming that he and M.D. are "bonded to each other." The juvenile court rejected this claim, noting that Curtis had not been "an active participant" in M.D.'s life. The court added: "There is no indication that the child will suffer any adverse consequences as a result of termination. Indeed, the termination may lessen the trauma to the child in the future and help him to start to heal." After our de novo review of the record, we agree with that assessment.

*C. Six-month extension.* Finally, we turn to Curtis's request to delay permanency. A court may deny termination and give a parent more time for reunification only if the need for removal "will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). And not only must the record show that parent will have surmounted the obstacles to reunification in six months, but we must consider whether the delay is in M.D.'s best interests. *See W.T.*, 967 N.W.2d at 323. Like the juvenile court, we find six more months will not help Curtis achieve what he has failed to do in the past two years. As the court noted: "He has no insight into the gravity of this case, the needs of his child, or his own limitations." Delaying permanency is not in M.D.'s best interests.

**AFFIRMED.**